THE BUFORD & GEORGE IMPLEMENT COMPANY v. RICHARD H. MCWHORTER.

ATTACHMENT — *Grounds* — *Fraudulent Mortgage.* Where a debtor mortgages his personal property for the purpose of hindering and delaying his creditors, such act is sufficient to justify the issuance of an attachment against the debtor, and it is no defense for him to show that a short time before the attachment he caused such fraudulent mortgage to be released, where it is further shown that immediately upon such release, and upon suspicious circumstances, the mortgaged property was re-mortgaged to other parties.

*Error from Sumner District Court.*

ACTION by the *Company* against *McWhorter*, to recover money; attachment on behalf of plaintiff levied on personal property of defendant; dissolved at the February term, 1886. This ruling plaintiff brings here for review. The opinion states the facts.

*George & King*, for plaintiff in error.
*McDonald & Parker*, for defendant in error.

Opinion by CLOGSTON, C.: At the commencement of this action an attachment was issued, which was afterward, on the application of the defendant, discharged; and the one question now presented is the review of the order discharging the attachment. The ground alleged for attachment, among others, was that the defendant had property and rights in action which he concealed, and was about to assign and remove and dispose of his property with the intent to hinder and defraud and delay creditors, and had assigned and removed and disposed of his property, or a part thereof, with the intent to hinder and delay his creditors. Before this court can reverse the ruling of the trial court in discharging the attachment, it must appear by the undisputed facts and circumstances in the record that some of the grounds for attachment were true, and upon such facts and circumstances be able to say that, as a matter

of law, the court erred in sustaining the motion to discharge the attachment.

The action was brought to recover some $1,600, and the indebtedness was not disputed. This indebtedness had existed since 1884. The plaintiff in support of the attachment showed that the defendant was the owner of a large amount of personal property which was covered by chattel mortgages, and that in August, 1886, prior to the levying of the attachment, the defendant mortgaged all of his personal property to one Wood for the sum of $1,800. This mortgage was given for a pretended indebtedness from defendant to Wood, alleged to have been contracted while they were in the army, and prior to the year 1865, but which the evidence showed was without foundation, and the mortgage without any consideration. The defendant on his own behalf on cross-examination said: "I owed some parties in Kansas City, and they were talking about suing me, and I owed some parties here, and I did not know but that they might come down here and give these parties some trouble, and I went and asked Wood to befriend me and accept a mortgage on my property, which he did." The defendant, while this Wood mortgage was of record, in substance stated that the mortgage was given to prevent parties in Kansas City from getting the property; in fact, it is not contended that the Wood mortgage was ever valid, or made to secure a *bona fide* indebtedness, but it is contended that because this mortgage was released on November 2, 1886, some three months before the commencement of this action, that for that reason, no matter how fraudulent it had been, it was not competent to establish any of the grounds alleged for the attachment. . The mortgage was made to Wood to defeat the claim of the plaintiff, because the defendant when referring to the Kansas City claims referred to the plaintiff's claim. Then the defendant was doing just what the plaintiff alleged in its affidavit for attachment, and because he had caused the mortgage to be released would not protect him from the consequences of his own fraud. But the record shows why this Wood mortgage was released at the time it was released.

The day of its release, or the next day thereafter, the defendant mortgaged the same property to his father-in-law for $700, that sum being about all the equity he had in the property; other mortgages having been given in the meantime to other parties to secure other indebtedness contracted long after the indebtedness to the plaintiff. The defendant claims that this mortgage to his father-in-law was given to secure him for money he had paid for the defendant, but at the time the defendant procured the release of the Wood mortgage he told Wood that his father-in-law was going to buy him a farm, naming what farm it was in Sumner county, and he wanted to give him a mortgage for his part of the money. Defendant was to pay some $500 as part payment on the land; he to pay so much, and the old gentleman so much. The evidence further shows that his father-in-law did buy the farm named by the defendant, and had the title conveyed to the defendant's wife. It is true this statement to Wood was not made under oath, and the statement now made by him was; but taking the entire transaction with Wood, the mortgage made to cover up his property, and the statements made for its release, together make a strong chain of circumstances connected with the purchase of the farm and the conveyance of the title to his wife, and which in our judgment needs a better explanation than the one given by the defendant. Wood was his friend, and there was no need of any explanation to procure the release of the mortgage. It was not necessary to state any falsehood or make any misrepresentations to procure its release. The mortgage was given to Wood for the defendant's benefit and not Wood's; therefore any statement made to Wood, his trusted friend, must be considered strongly against the defendant. Again, if the mortgage given to his father-in-law by the defendant was a *bona fide* transaction, and given to secure a then existing debt, as claimed by the defendant, the sustaining the attachment as far as defendant is concerned will not affect the rights of third parties; and when it is shown that such indebtedness did exist, and that other parties have rights to the property, their rights can then be protected.

It is therefore·recommended that the cause be reversed, and remanded to the court below with instructions to overrule the motion to discharge the attachment.

By the Court: It is so ordered.

All the Justices concurring.