## McDonald *v.* Union Pac. Ry. Co.

*(Circuit Court, D. Colorado.   June 18, 1890.)*

1. NEGLIGENCE—EVIDENCE—BURNING SLACK PILE—PERSONAL INJURIES.

    The defendant dumped the slack coal from its mine in a space 400 feet long, and 60 feet wide, between the mine and a town 500 yards distant, containing 600 inhabitants.   The slack pile took fire by spontaneous combustion, and, slack being constantly deposited, burned continuously.   The slack-pile was not fenced, as required by a law of the state.   The children, and others, living in the town, and strangers, were in the habit of visiting the mine by a rough, irregular, and narrow path leading from the town to the mine, which ran along the edge of the burning slack-pile.   In clear, calm weather the slack-pile emitted no smoke or steam, and, the surface or top being covered with ashes and other incombustible matter, the fire could not be seen, and persons having no previous knowledge of its existence could not detect its presence.   The plaintiff, a boy under 13 years of age, who was a stranger in the town, and who had no knowledge of the fire in the slack-pile, having gone from the town to the mine to witness its operation, was frightened by some of the workmen, and, in running towards the hotel in the town where he and his mother were stopping, ran into the burning slack-pile, and was severely burned. *Held,* the defendant was guilty of negligence, and liable in damages to the plaintiff for the injuries he sustained.

2. SAME—DAMAGES—PROVINCE OF COURT AND JURY.

    It is the province of the jury, having due regard to the instructions of the court applicable to that issue, to assess the damages for a personal injury; and this is one of the functions of a jury which the court has no right to invade or interfere with, except where it has reason to believe that the verdict is the result of passion or prejudice, or of a misunderstanding of the instructions, or a disregard of them; and for a judge to substitute the damages he would assess, acting himself as a jury, in the place of the damages the jury have assessed, for no other reason than that he thinks he is a better judge of the facts than the jury, is an invasion of the province of the jury, and a violation of the constitutional right of the suitor to have his cause tried by a jury, and the questions of fact in it determined by their verdict.

*(Syllabus by the Court.)*

At Law.   For opinion on demurrer to complaint, see 35 Fed. Rep. 38.

The following are the provisions of the Colorado Statutes in regard to fencing piles of slack coal referred to in the charge of the court:

"Section 1.   That the owner or operators of coal mines from which fine or slack coal is taken and piled upon the surface of the ground, in such quantities as to produce spontaneous combustion, shall fence said ground in such manner as to prevent loose cattle or horses from having access to such slack-piles."

"Sec. 3.   Every person violating sections one (1) and two (2) of this act shall be deemed guilty of a misdemeanor, and shall be fined in a sum not less than twenty (20) dollars, nor more than one hundred (100) dollars, to be collected as other fines are collected, and shall be further liable to any party injured thereby in the amount of the actual injury sustained."

*J. W. Mills,* for plaintiff.
*Teller & Orahood,* for defendant.

CALDWELL, J., *(charging jury.)*   The foundation of the plaintiff's action is the charge of negligence against the defendant.   Negligence is the omission to do something which the law enjoins, or which a reasonably prudent man would do under like circumstances, or the doing of something which a prudent and reasonable man would not do under the

particular circumstances. The alleged negligence of the defendant consists in erecting and maintaining a burning bed or pile of slack coal at a place and under conditions which made it dangerous to persons not having previous knowledge of its existence, and neglecting to fence the same, as required by the statutes of this state. There is no controversy about the leading facts of the case. The defendant was operating a coal mine. The main track of its railroad ran near the mouth of the mine or pit, and parallel to the main line, and 100 feet more or less from it ran a side track or switch. The road-bed of these two tracks was six or eight feet higher than the intervening space between them, and into this intervening space the defendant dumped the slack coal from its mine, which ignited by spontaneous combustion, and burned continuously. The dumping of the slack, and its burning, continued during the several years the defendant operated the mine. The length of the slack-dump pile was four or five hundred feet, and its width varied, being 68 feet at the north end, near where the path crossed the intervening space between the two tracks. The mine and machinery to work it was on the east side of the railroad tracks mentioned. On the west side of the tracks, and opposite to the mine, and only five or six hundred feet from it, was the town of Erie, containing five or six hundred inhabitants, and about 500 feet south of the mine was the railroad depot. Persons going from the town to the mine were accustomed to cross the space between the two tracks by a rather rough and uneven path, which ran on a shale and rock-dump very near the edge of the burning slack-pile. In clear, calm weather the burning slack emitted no smoke or steam, and, the surface or top being covered with ashes or other incombustible matter, the fire could not be seen, and persons having no previous knowledge of its existence could not detect it by any other sense than that of feeling, and to detect it by that sense they would have to come into actual contact with it. It was not dangerous in appearance, and there was nothing visible from which a stranger could detect its dangerous character. The children, and others, living in the town, as well as strangers, were daily in the habit of going to the mine to witness its working, and for other purposes, and in doing so crossed the space between the two tracks by the path before mentioned. The defendant did not prevent or prohibit persons from visiting its mine. The law of this state required defendant to fence its slack-pile. This it did not do, nor did it do anything to advise the public of the dangerous character of this slack-pile, or to prevent persons or stock from getting into it. In this state of things the plaintiff, then less than 13 years of age, visited Erie with his mother, who stayed at the hotel of the village. While there he went over to this mine out of curiosity and a desire to see the mode of operating it. While at or near the mouth of the mine some miners, men or boys, in their mining costumes, came out of the pit, and in sport or in earnest, it is immaterial which, said something about blacking or greasing him, probably advancing on him at the same time. Thereupon the plaintiff ran towards the village, and in crossing the space between the railroad tracks

missed the path, ran into the slack-pile, and was burned in the manner detailed in the evidence.

It is not claimed the plaintiff had any notice or knowledge of the fact that there was any fire in the place where he received his injury, or that by the exercise of reasonable care and diligence he could have seen or discovered the fire. The law made it the duty of the defendant to fence its slack-pile, and, if it did not do so, and as a result of its negligence in failing to comply with its legal duty in this regard the plaintiff received the injuries complained of, the defendant is liable. Persons are entitled to the protection which would accrue from a compliance with the statute, and the plaintiff had a right to presume the space between the railroad tracks was not a burning slack-pile, because it was not fenced. It was the legal duty of the defendant to fence the burning slack, and its omission to do so was negligence.

The defendant being guilty of negligence, your next inquiry will be whether the plaintiff was guilty of any such negligence as will prevent him from recovering; for it is a principle of law that one injured by the negligence of another cannot recover damages for such injury if by his own negligence he contributed to the injury. Upon the undisputed facts of the case, it was not an act of negligence for the plaintiff to visit the defendant's coal mine as he did, and he was not a trespasser there in a sense that would excuse the defendant for the acts of negligence by which he was injured, and which I have heretofore adverted to. Nor was it an act of negligence for the plaintiff, under the circumstances, to run away from the miners. A boy may lawfully run to avoid injury, or when frightened or in play, and the fact that the plaintiff was running on the occasion of his injury does not constitute negligence on his part. He undoubtedly had a right to run towards the hotel where his mother was stopping. Nor was it negligence in him when he did run not to follow exactly a rough, irregular, and narrow path leading from one railroad track to the other. There was nothing in the surroundings to inform him, or any other person having no previous knowledge of the facts, that he would incur any risk or danger in not keeping in the path in crossing the space between the railroad tracks. And if you find he did not see the fire, and could not, with the exercise of reasonable diligence, discover it, and did not know it was there, and that the surface of the slack-pile apparently presented a safe footing and passage, then he was not guilty of any negligence in attempting to run across it.

The disputed issue in the case is the question of damages,—what damages you shall award. And first, gentlemen, you will compensate the plaintiff for the pain and suffering he endured by reason of the injuries he received on this occasion. If a man takes from you your horse, there is a measure for your damages in that case, because you can call witnesses who have some knowledge of horses and their value, and prove the value of your horse. If a man takes from you a hundred bushels of wheat, there is a measure of computing the damages. In that case you do not even have to call witnesses to do it. You may take into court the price-list or price-current, as it is called, and show

what the value of wheat was in the wheat market at the time your wheat was taken, and that settles it. But there is no price-list, there is no price-current, for pain, for human suffering. You do not have to put a witness upon the stand. You cannot put a witness upon the stand, and ask him the value of suffering for an hour, for a day, for months, or for years. You do not have to call any witness for that. The value that shall be put upon pain and suffering is left to you, gentlemen; to your own good common sense and experience; you value that—that is, award damages for it—from your own knowledge, and upon your own judgment, unaided by any witness; for the law cannot call a witness to aid you.

And that is one item of the plaintiff's damages. He is entitled to compensation for the pain and suffering he endured immediately after the injury, at the time of the injury, and afterwards, down to the present time, and any pain or suffering that you find from a preponderance of the evidence that he may have to endure in the future. He is entitled, as another item, to compensation for any expenses that he may have been put to on account of this injury, and which have been proven to you by the evidence. He is entitled to compensation for the loss of time, and the value of that time, whatever the evidence shows, if anything, resulting from this injury; not only the loss of time from the time he received the injury down to the present time, but his loss of capacity, if any, to earn, by the ordinary pursuits of life open to a young man of his knowledge and condition in life, a living in the future, if these injuries are permanent. If you find, by a preponderance of evidence, that they have resulted in the infliction of permanent injuries, which impair his capacity or ability to work or earn wages in the future, you will take that into account.

These are the items of damages you take into consideration. You take all the circumstances, all the facts proven; his age; the character of the injuries with reference to their being permanent or not; and, if permanent, what is the degree of disability imposed by them; and all like considerations you will take into the account when you come to determine the compensation that you will award to the plaintiff for these injuries. The plaintiff's attorney has said to you, gentlemen, that he claimed and that you ought to award more than a compensation. He is not content with compensatory damages; that is, the damages you shall find and award to him for his pain and his suffering, for his expenses, for his loss of time, for the disability that he sustained, if any. He says those are not elements enough, but that in addition you should award him damages as a punishment to this defendant for not having complied with the statute. That you cannot do, gentlemen. That claim is not supported by the law. It is, moreover, in the very teeth of the statute of the state under which it is claimed; for that statute in terms says that the persons or the corporations neglecting to fence these slack-pits shall be liable to any party injured thereby "in the amount of the actual injury sustained,"—thus in terms cutting off exemplary damages.

Now, gentlemen, I need scarcely say to you that you will decide this case precisely as you would if two of your neighbors were the parties, and in no other light or sense; that you will give to the plaintiff nothing because he is a natural person, a youth or a boy, just for that reason, out of sympathy for him; and you will add nothing to his verdict because the defendant is a corporation. You will decide this case as though it was a case between two natural persons. The law, gentlemen, is an utter stranger to sympathy, and an utter stranger to prejudice; and the court or the jury that lets either sympathy or prejudice creep into their minds in the decision of a cause submitted to them commits a very grave mistake. You are the sole judges of the facts. Consider all the testimony, and in the light of all the testimony on the subject of these injuries, and their extent, determine what is a fair, just compensation to the plaintiff for the injury he has sustained. That will be the amount of your verdict.

*Mr. Teller.* I suggest the question to which I called your honor's attention as to what, at least, the character of the evidence would show about the impairment of his powers. I think they ought to be instructed somewhat on that.

*The Court.* I think not. I think the general instruction covers the ground. I say to you again, gentlemen, you are the judges of facts. You give such weight to the testimony of each witness as you think it entitled to. It is from that evidence you must determine for yourselves the character of these injuries, and the amount plaintiff is entitled to recover.

## ON MOTION FOR NEW TRIAL.

CALDWELL, J. This case has been submitted on a motion for a new trial. The grounds assigned for the motion are misdirection of the jury as to the law, and excessive damages. The facts in this case which determine the legal liability of the defendant were not controverted at the trial, and are not controverted now. There is no ambiguity or conflict in the evidence relating to the question of the defendant's negligence. The controversy turns on the rules of law applicable to the uncontradicted facts, and as to whether the jury were warranted by the evidence in assessing the plaintiff's damages at the sum of $7,500. The law applicable to the facts of the case was correctly expressed in the charge to the jury. *Bennett v. Railroad Co.*, 102 U. S. 577; *Railroad Co. v. Stout,* 17 Wall. 657, 2 Dill. 294.

As to the damages, it was quite clear to my mind upon the evidence, and from an inspection of the plaintiff's head, hands, and arms on the witness stand at the trial, that the injuries he received were not slight or superficial, but that they were serious, and had resulted in permanent impairment of his sight, permanent injury to his urinary organs, and permanent loss of strength in his hands and arms, and, probably, a permanent affection of his whole nervous system. The court was asked to instruct the jury that there was not sufficient evidence to warrant them in finding plaintiff's injuries were permanent. That instruction was re-

fused, because I believed there was sufficient evidence to warrant such finding, and that the fact was so. I did not, however, indicate to the jury that such was my opinion, but left the question to their determination upon the evidence.

What damages shall be awarded a plaintiff entitled to recover in this class of actions is a question of fact for the jury. As to some of the items of damages in such cases, much is necessarily left to the knowledge, judgment, and experience of the jury, and their sense of justice and right. There is no fixed measure of damages for some of the items which are to be taken into the account in such cases; and men of equal intelligence and fairness often vary widely in opinion as to what would be a just compensation in a given case. The assessment of the damages is one of the functions of the jury which the court has no right to invade or interfere with, except where the court has reason to believe that the verdict is the result of passion or prejudice, or of a misunderstanding of the instructions, or a disregard of them. It is not contended that any of these things can be justly charged upon the jury that tried this case. The most that is claimed is that they erred in judgment, and the court is asked, in effect, to convert itself into a jury, and ascertain the damages it thinks ought to be assessed in the case, and reduce the verdict of the jury to that amount, or grant a new trial.

It is my observation and experience that a jury of intelligent, fair-minded men, familiar with the practical affairs of life,—and the panel that tried this case, I think, may fairly be said to come up to this standard,—are better judges of such a question of fact than the judge on the bench. But, whether better judges or not, it is their exclusive province to determine the question; and for a judge to substitute the damages he would assess, acting himself as a jury, in the place of the damages the jury have assessed, for no other reason than that he thinks he is a better judge of the fact than the jury, is an invasion of the province of the jury, and a violation of the constitutional right of a suitor to have his cause tried by a jury, and the questions of fact in it determined by their verdict. In this case the damages are not in my judgment excessive, in the sense that the jury could not upon the evidence fairly find that sum. It boots nothing that, if the cause had been tried before me, I would have found a somewhat less sum.

It is said that the former verdict in this case for $2,500—a much less sum than the present verdict—was set aside by Judge HALLETT, because he considered it excessive. This argument suggests these observations: *First.* It is conceded that on the former trial the statute requiring the defendant to fence its slack-pile was not brought to the attention of the court, and hence it was a doubtful question whether the defendant had been guilty of any negligence, and this doubtless influenced the jury in making up their verdict, and the court in setting it aside. *Second.* There is nothing to show that the evidence was the same on both trials. From the fact that the court set aside the first verdict on the ground that the damages were excessive, it is fair to presume that the plaintiff strengthened his case on this head at the second trial by additional proof

as to the severe nature of his injuries, and their permanent character. And, *thirdly*, if the proof was the same at the two trials, it only shows the widely different conclusions that men of equal intelligence and equal opportunities will draw from the same state of facts. I should feel very much like deferring to my learned Brother HALLETT on a question of law, but when we go outside of the law, and put ourselves in the place of a jury to pass upon the facts, in this kind of a case, I think a good, intelligent jury knows better how to do that than either or both of us. And if this case, on the evidence I heard at the last trial, had been submitted to Judge HALLETT and myself, sitting as a jury, and he had thought $2,500 an excessive verdict, there would have been a hung jury.