[No. 6971.]

### HAFELFINGER V. PERRY.

1. ATTACHMENTS—*Fraudulent Conveyance*—The execution of a mortgage with the purpose to hinder or delay a creditor, affords ground for an attachment by such creditor, of the properties of the mortgagor, even though the mortgagor has no purpose to eventually defeat the creditor in the collection of. his demand, and even though the debt secured by the mortgage is a valid and subsisting liability—(447).

2. APPEALS—*Finding on Conflicting Evidence*, if supported by competent testimony, will not be disturbed—(447).

*Error to Weld District Court.*—HON. HARRY P. GAMBLE, Judge.

Messrs. GARBUTT, CLAMMER & SARCHET, for plaintiff in error.

Mr. FRED W. STOW and Mr. FRANK L. MOORHEAD, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

In 1908 the defendant below, Julius Hafelfinger, plaintiff in error here, was a tenant upon land of plaintiff below, James R. Perry, defendant in error here, under written lease. On May 9, 1908, Hafelfinger executed to the Northern-Colorado Loan Association a chattel mortgage, securing the sum of $1800., on personal property, including growing crops for the season of 1908 on the land leased from plaintiff. The mortgage was filed for record and duly recorded in the office of the county clerk and recorder on May 12, 1908, and the money secured thereon was used to take up a mortgage theretofore in force on a portion of the property, and also to pay cropping expenses for that season. On the 29th day of October, 1908, this suit was begun, and on the same day defendant executed another chattel mortgage to one Madden, to secure the payment of $2600., upon practically the same property that the first mortgage covered, particularly the growing crops upon plaintiff's land. The suit was to recover the agreed rental price of the land. There was no dispute about the amount due, and judgment was rendered in favor of the plaintiff therefor. In order, however, to secure payment of any judgment which he might recover plaintiff, when he began the action, sued out a writ of attachment and had it levied on personal property belonging to the defendant. The averments of the affidavit in attachment were traversed and a hearing had upon the issue thus tendered. The court found in favor of plaintiff and sustained the writ. It is to review the findings and judgment of the court upon that issue alone that the case is brought here, the judgment recovered being unquestioned.

In the written lease plaintiff expressly reserved a first lien upon all the personal property belonging to defendant, used in and about the premises; and also upon all of the crops grown and to be grown on the land until March 1, 1909. But despite this fact, and without the knowledge and consent of plaintiff, the defendant executed the chattel mortgage to the Loan Association on May 9, 1908, which was presently thereafter recorded in the office of the county clerk and recorder of Weld county, but of which the plaintiff had no actual notice. To keep the plaintiff satisfied and retain his confidence, the defendant, through his wife, sometime in July, 1908, Hafelfinger himself being then present, represented that he had no property mortgaged, and had no occasion to mortgage any. The plaintiff, being content upon this point, did not record his lease, but relied absolutely upon the good faith of the defendant, believing his lien through the provisions of the lease not only the prior, but the only one. The proofs show that on the 29th of October, 1908, Hafelfinger executed a second mortgage to one Madden, and also at the time of the execution of that mortgage he stated that the plaintiff was urging him to give a mortgage to secure the rent of the premises, but he preferred that Madden should have the second mortgage; that he intended to let plaintiff wait until he, Hafelfinger, could secure the money to pay the rent. The offer to execute the mortgage to Madden was voluntary, Madden testifying that he considered he already had enough security, and did not require or request more.

The whole question here is one of fact. If there is testimony to support the proposition that the defendant executed these mortgages for the purpose of hindering or delaying the plaintiff in the collection of his rent, then that gave a ground of attachment, notwithstanding the

claims of Madden and the loan company may have been valid and subsisting ones. Nor is it necessary that the purpose of the defendant in giving these mortgages was to actually defraud, and to ultimately defeat the claim of the plaintiff. If his purpose was to hinder or delay, or in any way to injure the plaintiff or interfere with him in enforcing his claim, in any lawful way, a ground of attachment is established. The intent of a person can only be inferred from his acts and statements. The court below, who saw and heard the witnesses, found upon this issue that the purpose of the defendant was to delay and hinder plaintiff in the collection of his debt, and since that finding is supported by competent testimony it will not be disturbed.

The court below said:

"It seems to me that this plaintiff had ample reason to sue out this writ of attachment, under the circumstances of this case and the manner in which this man had dealt with him. His subsequent act (giving the mortgage to Madden) would seem to bear out the theory of the plaintiff in his affidavit that the defendant was figuring on making this mortgage, because he actually did make it."

In *Curran v. Rothschild,* 14 Colo. App. 497, it is said:

"The opinion of counsel for the defendant seems to be that to justify an attachment upon that ground, the transaction must be infected with fraud in the general and odious sense of the term, and that to sustain the attachment against a traverse, it is incumbent upon the plaintiffs to show that the motive of the transfer was dishonest, and its purpose to cheat creditors and deprive them of the power ever to realize anything on their claims. Proof of such intent would, of course, be sufficient, on the principle that the greater includes the less,

but to authorize an attachment, the existence of such extreme conditions is not required by the statute. A debtor may have no intention of defeating the claims of his creditors; he may sincerely believe that ultimately it will be better for them, and they will realize more money, if they are prevented from seizing and sacrificing his property; yet if he conveys or assigns it for the purpose of hindering or delaying them, his act is fraudulent within the meaning of the law, and the fraud with which he is chargeable is not constructive, but actual. Creditors have the right to use the machinery of the law for the collection of their debts; a disposition by the debtor of his property which puts it beyond the reach of legal process, hinders and delays them, and if his intention in making the transfer is to deprive them of the benefit of their legal remedies, even though he also intends that eventually the proceeds of the property shall be applied in payment of their claims, the transaction is fraudulent. It is the intent to delay creditors which constitutes the act a fraud upon them.—*Spencer v. Deagle,* 34 Mo. 455; *Weare Commission Co. v. Druly,* 156 Ill. 25; *Knight v. Packer,* 12 N. J. Eq. 214; *Van Nest v. Yoe,* 1 Sanf. Ch. 4; *Wells v. National Bank,* 23 Colo. 534; *Buell v. Rope,* 6 App. Div. N. Y. Supp. 113."

*Sherrill v. Bench & Bro.,* 37 Ark. 560, *Taylor v. Kuhnke,* 26 Kas. 132, and *Buford & George Imp. Co. v. McWhorter,* 41 Kas. 262, expressly declare this doctrine. In vol. 1 of Shinn on Attachment, at page 179, section 122, it is said:

"A debtor may, in good faith, give a *bona fide* creditor a mortgage to secure his debt and thereby create no ground for attachment against him at suit of another creditor for disposing of his property with the intent to defraud. But if such a mortgage be given 'with intent'

to injure other creditors, it will be ground for attachment."

There are many authorities supporting this principle, which seems to be well recognized and generally approved. We think it clearly applicable under the facts to the case at bar.

Numerous authorities are cited and relied upon by counsel to reverse this judgment, where creditors have received from debtors security made in good faith, not for the purpose of hindering or delaying any other creditor, but with the sole design of securing *bona fide* obligations, and in such case and under such circumstances the courts have said that those transactions were not made to hinder, delay or defraud creditors. In the cases cited to this point no evidence of fraud or fraudulent intent on the part of the debtor in giving the security is shown, and in none of them are the facts such as to bring them within the facts of this one. Where from all of the testimony it can be plainly seen that it was the design of a party to hinder or delay the collection of a just claim, although perhaps not actually to ultimately defeat it, still a ground of attachment is made out. In this case, by his own statements, it is clear that it was defendant's purpose to hinder and delay plaintiff in the collection of his rent, and to postpone his claim to that of others, to such time as it might be convenient for him to pay. The trial court so found, upon ample testimony, and upon that fact question we are thereby concluded. The judgment is affirmed.                        *Judgment affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE WHITE concur.