[No. 3978.]

## CLARK V. ALDENHOVEN.

1. NEW TRIAL—*Weight of Evidence*. The weight of evidence does not depend upon its volume, or the number of witnesses. Jurors exercise a large discretion in judging of the credibility of witnesses, and separating the true from the false. Their conclusions will not be disturbed, unless the verdict manifests bias, prejudice, or a wanton disregard of their duties and obligations by the jurors. (505)

As a general rule, when the evidence is conflicting the trial court will refuse a new trial even though there may be a slight preponderance against the verdict. Its action will not be reviewed unless a manifest abuse of discretion appears. (505)

In actions for tort a verdict will not so readily be vacated as against the weight of evidence, as in actions *ex contractu*. A verdict will not be set aside either in the trial court or the court of review unless it is so manifestly against the weight of evidence as to warrant a presumption that the jury misunderstood the evidence, or misconstrued its effect, or were influenced by improper motives. (506)

The court of review will not interfere where there is evidence to support the verdict. (505)

The trial judge having exercised extreme caution to protect the rights of the plaintiff in error, both in the admission and exclusion of evidence, and in the instructions the court of review declined to reverse this action in denying new trial. (509-510)

2. —— *Excessive or Inadequate Damages, When a New Trial Will Be Granted For,* rests in the discretion of the trial court, in cases where there is no legal measure of damages, or where the correctness of the result is not determinable by any definite and precise rule. (509)

3. Exemplary Damages—*Construction of Verdict.* Where the verdict is a general one, not showing that anything is allowed by way of punishment, and the jury were expressly charged that "the law does not require you to give exemplary damages," held there was no error in this respect. (511)

*Error to Denver District Court.* Hon. James H. Teller, Judge.

Mr. George C. Manly, Mr. Clay B. Whitford, Mr. Henry E. May for plaintiff in error.

Mr. George K. Andrus for defendant in error.

Cunningham, Presiding Judge.

The facts necessary to an understanding of the issues in this case are about as follows: Mrs. Aldenhoven, defendant in error and plaintiff below, staked her cows on certain vacant lots belonging to Clark, plaintiff in error and defendant below. This led to an altercation in which it is admitted that Clark pulled the picket pins and drove Mrs. Aldenhoven's cows off the premises. During the altercation the plaintiff was precipitated into a creek nearby. Plaintiff alleges that she fell into the creek as the result of a blow from an iron pipe which defendant had snatched from her hands. Defendant denies that he struck plaintiff at all, but admits that he took the gas pipe away from her, to prevent her from striking him, and he insists that in the melee the cow became frightened and the rope with which she was tied caught Mrs. Aldenhoven, and in this manner, through no fault of his whatever, she was toppled over into the creek. Civil action was begun by plaintiff for damages, resulting in a verdict in her favor for $2,500; from a judgment thereon the case is here on writ of error for review.

1. On the trial there was but one witness, aside from plaintiff and defendant, who claimed to have seen the difficulty; that witness was a young man, some nineteen years of age, who for four years had been, and at the time of the difficulty was, in the employ of the defendant Clark. His

testimony in all particulars corroborated the testimony given by Clark in his own behalf, and was to the effect that Clark snatched the pipe from plaintiff's hands, but did not strike her with it, and that she was precipitated into the creek in the manner described by Clark. There was some evidence offered on rebuttal tending to show that the young man who thus corroborated Clark's testimony was not in a position where he could have seen the altercation. The jury must have believed plaintiff's testimony to the effect that she was struck by Clark and knocked into the creek, and upon the evidence substantially as given, and which was supported (to the extent presently to be stated) by plaintiff's physician who examined her shortly after the quarrel, we can not say that such finding is not warranted.

2. The most serious question presented for our determination is that raised by the contention of Clark that the verdict is excessive. Whether this be true or not depends largely upon the extent of the plaintiff's injuries. Upon this point the evidence was conflicting. Plaintiff testified that she was landed in the creek by the force of the blow which Clark dealt her with the iron pipe, and that as a result thereof, for a time she was unconscious, and with great difficulty succeeded in reaching her home nearby; that she was nervous and chilled on the night following (the accident occurred in the evening), and that her pain was so severe as to cause her to cry; that this pain continued for three or four weeks following the accident; that she was confined to her bed for a week; that as a result of the medicine which she was forced to take for her nervous condition the hearing of her right ear had become seriously impaired, and that she had not, at the time of the trial, which occurred in December, been well, the injury having occurred in June. There was other testimony similar to this given by plaintiff's two daughters and her husband. A doctor was called on the night of the injury, and he testified that he found a red spot or bruise on plaintiff's left side at the point where she claims she had

been struck; the doctor also says he found her in a highly nervous condition, talking incoherently; he also testified that although plaintiff had not been a woman of robust health, her condition had been much worse since the injury. Plaintiff herself testified that shortly before the injury she weighed 130 pounds, but that at the time of her trial her weight was but 103 pounds. Defendant apparently did not ask to have a physical examination of plaintiff made by physicians, and the only testimony offered to contradict plaintiff's statement, and the statement of her witnesses, with reference to her injury, was that of certain witnesses who testified that they had seen her up and about shortly after the injury, and that they did not observe any marked change in her condition. Several of these witnesses were employes of the defendant, and one was a policeman who had had some difficulty with the plaintiff, or, at least, had been obliged frequently to warn her against permitting her cows to run at large and thus annoy her neighbors.

In approaching the consideration of the contention made by plaintiff in error that the verdict is excessive it must be borne in mind that the plaintiff's action in this case sounds in tort, and that:

"A verdict against the weight of evidence will be more readily set aside as against the weight of evidence in actions *ex contractu,* where there can be more precise rules for weighing the evidence, than in actions *ex delicto.*" 14 Enc. Pl. & Pr., p. 774.

It may be conceded that the verdict would appear, upon a reading of the record, to be a generous one, but,

"Whether a new trial should be granted for excessive or inadequate damages rests within the discretion of the trial court in cases where there is no legal measure of damages, or where the correctness of the decision of the court can not be determined by the application of definite and precise rules." —14 Enc. Pl. & Pr., p. 755.

"It is a rule of both trial and reviewing courts not to set aside a verdict unless it is so manifestly wrong or so clearly against the weight of evidence as to warrant the presumption that the jury misunderstood the evidence or misconceived its force and effect, or was influenced by malice, passion, prejudice or other improper motives."—14 Enc. Pl. & Pr., p. 777,

And,

"As a general rule, where the evidence is conflicting, the trial court will refuse a new trial, even though it may appear that there is a slight preponderance of evidence against the verdict. In such cases it is a matter of discretion with the trial court to refuse a new trial, and its order will not be disturbed unless it appears clearly that there was an abuse of discretion."—Id. 780.

In *Green, Admx. v. Taney,* 7 Colo. 281, 3 Pac. 423, Mr. Justice Helm, speaking for the court, says,

"The weight of evidence does not wholly consist in its volume, nor in the number of individuals sworn. That is a most beneficent evidential rule which gives juries a large discretion in judging of the credibility of witnesses; which makes it peculiarly their province to discrimnate between those who testify before them, and imposes upon them the duty of sifting the evidence, accepting the true and rejecting the false."

And in *Leitendorfer v. King, Admx.,* 7 Colo. 436, 442, 75 Pac. 816, the same learned judge uses this language:

"The sum named in the verdict is large; a court, or perhaps another jury, might have awarded less; but we are not prepared to say that it is so excessive as to justify interference therewith by us. A large discretionary power is lodged with the jury in cases like this."

Courts of review should be more reluctant in interfering with verdicts on the ground that the same are excessive than trial courts.—14 Enc. Pl. & Pr., p. 780:

In *Hallack v. Stockdale,* 14 Colo. 198, 23 Pac. 340, the following language is used:

"It is a well settled rule of this court, as well as of all courts of appellate jurisdiction, and a cardinal principle, that the jury is the final and only tribunal to determine questions of fact, and that where facts are so found, their finding will not be disturbed by the appellate court, unless misconstrued by the court, or their verdict is so palpably incorrect as to show bias, prejudice, or a wanton disregard of the duties and obligations of jurors; and this rule is well established in, and sustained by, reason."

Following this language the reasons for the rule as announced are well presented, and at p. 201 of the same opinion the court uses this language, especially applicable to the case here under consideration:

"Another cogent reason for the strict adherence of appellate courts to the rule above laid down is the fact that the trial judge, having the same opportunities for observation as the jury, can determine whether the jury are honestly and conscientiously performing their duty; and, if he is of the opinion that they are not, and that the verdict was the result of bias and prejudice, and made in disregard of duty, he can at once set it aside, and order a new trial. Where, as in this case, the questions are purely of fact, and the jury being the only tribunal for their determination, appellate courts will not interfere, *where there is evidence to support the verdict.*" (Italics are ours.)    See *Chapin v. Goodell,* 2 Colo. 608; *Barker v. Hawley,* 4 Colo. 316; *Coon v. Duckett,* 13 Colo. 14, 21 Pac. 905; *Johnson v. Jones,* 16 Colo. 138, 26 Pac. 584; *Conrey v. Nichols,* 35 Colo. 473, 84 Pac. 470; *Millard v. Loser,* 52 Colo. 206, 121 Pac. 156; *Haldeman v. Colorado City,* 52 Colo. 238, 120 Pac. 1042; *Beggs v. Trump,* 52 Colo. 242, 121 Pac. 167; *Hafelfinger v. Perry,* 52 Colo. 447, 121 Pac. 1021; *Zimmerman v. Denver Tram. Co.,* 18 Colo. App. 480, 72 Pac. 607: Standard Enc. of Proc., vol. 2, pp. 434, 438, 442.

The Standard Encyclopedia, at p. 438, thus announces the rule which should govern appellate courts:

"A reviewing court is very reluctant to set aside a verdict on questions of evidence, and, generally, if there is any evidence at all to uphold the verdict, the court will deem it conclusive."

In support of this rule as announced in the text, which was prepared by Prof. William L. Burdick, author of "New Trials and Appeals," a long array of cases from thirteen different states are cited. The case of *Union D. & R. Co. v. Smith*, 16 Colo. 361, 27 Pac. 329, is a very interesting and important one, in view of the number of trials had therein, and the standing of the attorneys who represented the opposing parties. The value of the opinion is enhanced by the fact that it was written by the Supreme Court Commission (as was also *Hallack v. Stockdale, supra*), then composed of three able judges, and concurred in by the Supreme Court, which at that time was composed of Justices Helm, Elliott and Hayt. The Supreme Court appended to the commissioners' opinion an approving paragraph, from which we shall presently quote a sentence. The Supreme Court Commission, at p. 371, used the following language, citing numerous cases from various states in support thereof:

"Whatever may be the personal judgment of this tribunal as to the extent of the injury (the defendant brought his action for false arrest, which had been followed by his incarceration for only a few hours, and the jury had assessed his damages at $3,000) these successive verdicts ought to control the determination. * * * It is a case peculiarly within the province of a jury. Their right to assess the damages within any apparently reasonable limit ought not to be interfered with. An examination of all the cases upon both sides of the question clearly demonstrates that there is no uniform rule by which the amount of damages may be measured. There is the widest diversity of opinion among the courts as to the judgments which shall be allowed to stand. The range is wider, probably in such cases, than in any other."

Supplementing this view of the Commission, the Supreme Court used the following language:

"Some deference should also be paid to the action of the trial judge, who hears the testimony of the living witnesses. The weight of his opinion supporting that of the jury is an additional reason for not interfering upon appeal. It has been said that in such cases the wrong must be very gross and the damages enormous for the court of review to interpose upon the ground of an excessive award."

In *McDonald v. U. P. Ry. Co.*, C. C. 42 Fed. 579, a case arising in this jurisdiction, Mr. Justice Caldwell, speaking for the court, said:

"It is my observation and experience that a jury of intelligent, fair-minded men, familiar with the practical affairs of life—and the panel that tried this case, I think, may fairly be said to come up to this standard—are better judges of such a question of fact than the judge on the bench. But whether better judges or not, it is their exclusive province to determine the question; and for a judge to substitute the damages he would assess, acting himself as a jury, in the place of damages the jury have assessed, for no other reason than that he thinks he is a better judge of the fact than the jury, is an invasion of the province of the jury, and a violation of the constitutional right of a suitor to have his cause tried by a jury, and the questions of fact in it determined by a jury. * * * It boots nothing that, if the cause had been tried before me, I would have found a somewhat less sum."

It appears from the opinion of Judge Caldwell that the McDonald case had been previously tried before Judge Hallett, in the United States District Court, and that Judge Hallett had set aside a verdict for $2,500 on the ground that the same was excessive, and it further appears that in the Circuit Court the jury had returned a verdict in the same case for $7,500, and it was the latter verdict which Judge

Caldwell refused to set aside, using the language above quoted, and also the following:

"If the proof was the same at the two trials, it only shows the widely different conclusions that men of equal intelligence and equal opportunities will draw from the same state of facts."

Judge Caldwell is here referring to the fact that Judge Hallett had set aside a much smaller verdict. Continuing, Judge Caldwell says:

"I should feel very much like deferring to my learned brother Hallett on a question of law, but when we go outside of the law and put ourselves in the place of a jury to pass upon the facts, in this kind of a case, (the McDonald, like the case here under consideration, was for personal injuries) I think a good, intelligent jury knows better how to do that than either or both of us. And if this case, on the evidence I heard at the last trial, had been submitted to Judge Hallett and myself, sitting as a jury, and he had thought $2,500 an excessive verdict, there would have been a hung jury."

In *Monteith v. U. P. Ry. Co.,* 13 Colo. App. 425, 58 Pac. 338, the late Judge Wilson, who wrote the opinion, quotes with approval the following from Judge Fields' opinion in *Oullahan v. Starbuck,* 21 Calif. 415:

"It is not enough, however, to authorize any interference with the action of the court below, either in granting or refusing a new trial for alleged insufficiency of the evidence, that the appellate court, judging from the evidence as it is reduced to writing, would have come to a different conclusion. The court before which the witnesses were examined is usually better qualified to determine the propriety of granting or refusing a new trial on this ground than any appellate court, and its action in this respect will not be disturbed except for the most cogent reasons."

In this connection, it is proper to say that the learned trial judge who presided in the instant case exercised the utmost

caution, both in his rulings on the admission of testimony and in the granting and refusing of instructions, to protect the rights of the defendant; hence, under the authorities cited above, we do not feel at liberty to substitute our judgment for his, as well as for the judgment of the jury.

3. It is urged in this court on behalf of plaintiff in error that he is a poor man, and this verdict will mean his financial ruin. It is not necessary that we should determine whether this is, ordinarily, a consideration that should affect the judgment of a court of review, for the reason that we find no evidence whatever in the record to support this statement. On the contrary, there is evidence that defendant is a man possessed of something like seventeen acres of land adjacent to the city of Denver, for which, five years prior to this trial, he paid $5,000, and there is evidence indicating that he owned and operated a brick yard at the time of the injury which gave employment to a considerable number of working men.

4. Complaint is made that the court, by its instructions, permitted the jury to consider the question of exemplary damages. It is impossible to state, since the verdict was general, whether or not exemplary damages were allowed. No request appears to have been made on the trial by either party that the jury be required to indicate by its verdict whether or not they found the case one warranting exemplary damages, or whether they included exemplary damages in their verdict. We believe the case is one where, under the law, the question of exemplary damages might, with propriety, be submitted to the jury. But, in this connection we are constrained to say that the question of exemplary damages is a perplexing one to appellate courts, as well as to *nisi prius* courts, and its submission to a jury not infrequently leads to the reversal of judgments that, but for the injection of this question, might have been sustained. The jurors, however, were cautioned by the trial court that they should be very cautious in the application of the rule allowing exemplary damages, and were fur-

ther advised that: "The law does not require you to give ex-emplary damages in the case." We discover no error in the submission of the question of exemplary damages in this case.

The judgment of the trial court is affirmed.