## No. 26300

**Rudy Bernhardt, Dr. Terry Collinson, Robert Fraser, Col. Charles Hairston, Dr. James R. Kennedy, Max Grindle, Roy Prangley, Elmer Wolfe, Dr. Jim Worlton, Charmaine Barney, Ray Foster, John Farady, H. R. Catey, d/b/a Bozeman, Catey Wynn Capers, Mont S. Johnston, John W. Corlis, Sam L. Jeffers, Dr. Ignacio Quijada, J. K. Carpenter, and Dr. A. H. VanDerhor v. The Commodity Option Company, Inc., D. A. Hartness and John McGinley**

(528 P.2d 919)

Decided December 2, 1974. Opinion modified and as modified rehearing denied December 16, 1974. Rehearing stricken as not timely filed February 24, 1975.

Lester D. Sitter, for plaintiffs and appellants.

Carroll, Bradley & Ciancio, P.C., John S. Carroll, for defendants and appellees.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Plaintiffs-appellants brought an action in the district court for breach of contract alleging *inter alia,* that the defendant Commodity Option Company failed to exercise certain options on plaintiffs' behalf. The complaint was subsequently amended to include claims for conversion, fraud, and violation of federal and state security laws. Along with the filing of the complaint, plaintiffs filed an affidavit in attachment, and an attachment bond. The affidavit in attachment alleged:

"That Defendants are about to remove their property or effects, or a material part thereof, out of this state, with intent to defraud or hinder or delay their creditors, or some one or more of them, or to render process of execution unavailable when judgment is obtained; and

"That Defendants fraudulently contracted the debts respecting which the suit is brought, or by false representation or false pretenses or by fraudulent conduct, procured money of Plaintiffs."

On July 9, 1973, the clerk of the El Paso District Court issued a Writ of Attachment; on the same date, and pursuant to a local practice, the district court Judge, Hon. John F. Gallagher, issued a writ of garnishment, which was then served upon several banks thus freezing defendants' accounts.

Thereafter, defendants moved to dissolve the writs on the ground that the Colorado rules on attachment, C.R.C.P. 102, and garnishment, C.R.C.P. 103, are unconstitutional in that they

allow a plaintiff to deny a defendant the use of his property without notice and a hearing, and that such denial constitutes a deprivation of defendants' property without due process of law. The district court agreed, and ordered the writs dissolved. We reverse.

Plaintiff argues that because this case involves a pre-judgment garnishment of defendants' bank accounts, as opposed to wage garnishment, the prohibition in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, against pre-judgment wage garnishment without prior notice and a right of the defendant to be heard, does not apply. Therefore, plaintiff argues the Court is free to adopt a more flexible approach in determining what process is due in this situation. Defendant asserts that C.R.C.P. 102 and 103 cannot withstand constitutional scrutiny and should be struck down under the guidelines enunciated in *Sniadach, supra,* and *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556. We find that the procedure followed in this case was consistent with the requirements of the due process clause.

We point out, at the outset, that there was in effect at the time of this attachment and garnishment a practice in the trial court represented by its following directive:
"If the writ of garnishment is asked for *in connection* WITH THE ISSUANCE OF A WRIT OF ATTACHMENT, the Clerks will NOT issue the writ of garnishment but will send counsel to the Judge to whom the case is assigned for the JUDGE TO ISSUE THE WRIT OF GARNISHMENT if he still wants to in face of the U.S. Supreme Court ruling in SNIADACH V. FAMILY FINANCE CORP., 89 Sup. Ct. 1820 (1969)."
The writ here was issued by a judge in accordance with that directive.

■ We note that this case involves the garnishment of defendants' bank accounts, and therefore does not come within the ambit of the situation present in *Sniadach, supra.* There, the Court specially noted that the type of property sought to be attached is an important factor to consider in determining whether the procedure used provided the defendant with due process. The Court there pointed out that

"We deal here with wages — a specialized type of property presenting distinct problems in our economic system." *Sniadach v. Family Finance Corp.,* 395 U.S. at 340.

Nevertheless, defendant argues that *Fuentes v. Shevin, supra,* and its sweeping requirement that there be an adversary hearing before an individual may be temporarily deprived of his property, is controlling in this case. However, read in conjunction with the recent case of *Mitchell v. W. T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), it becomes very questionable whether the generalizations made in *Fuentes* have any vitality today.

In *Mitchell,* the Supreme Court upheld Louisiana's sequestration statute against a due process argument even though it allowed for a seizure of property without any notice to the debtor, and with an opportunity for a hearing only after the seizure took place. The weighing and balancing of the competing interests, and the consideration of procedural safeguards that the Court undertook in *Mitchell,* is appropriate here and leads us to the same result.

■ In Colorado, a writ of garnishment can only be issued after the issuance of a writ of attachment. C.R.C.P. 103(b). C.R.C.P. 102 allows an individual, upon the filing of a complaint, to acquire a writ of attachment in certain enumerated instances. C.R.C.P. 102(b). Execution of the writ serves as a lien on specified property throughout the duration of the litigation, thus securing for the plaintiff the practicality of benefitting from any judgment he might be awarded. In this case, where the affidavit alleged fraud and the secretion or removal of assets with the intent to defraud, the benefit of the attachment statute to the plaintiff is obvious. On the other hand, garnishment of defendants' bank accounts freezes those accounts, thus denying to defendants the right to use those monies. That this is a deprivation of defendant's property, or right to the use of his property is beyond question. Nevertheless, the procedure employed in this case provided defendants with sufficient protection so as to comport with the requirements of the due process clause.

First, C.R.C.P. 102(c) requires that the plaintiff must put up a bond in double the amount that he is claiming. Thus, "if the

defendant recover judgment, or if the Court shall finally decide that the plaintiff was not entitled to an attachment, the plaintiff will pay all costs that may be awarded to the defendant, and all damages he may sustain by reason of the wrongful suing out of the attachment . . ." C.R.C.P. 102(c). Second, C.R.C.P. 102(p) allows the defendant, within 20 days after the service of the writ of attachment upon him, to traverse by affidavit, and "put in issue the matters alleged in the affidavit upon which the attachment is based." C.R.C.P. 102(p). Therefore, by traverse, the defendant can require the plaintiff to substantiate the causes alleged in his affidavit, and if he does not, the attachment (and hence the garnishment) is dissolved. Third, C.R.C.P. 102(y) allows the defendant to apply for the discharge of the attachment if the writ was improperly issued for any reason appearing on the face of the papers and proceedings in the action. Finally, C.R.C.P. 102(w) allows the defendant to post his own bond and have released to him "any money in the hands of the clerk or any property in the hands of the sheriff." C.R.C.P. 102(w).

In sum, the requirement of the bond to insure against costs and damages to the defendant, the ability of the defendant to get an immediate hearing by means of a traverse, the availability of an application for discharge, and the opportunity available to the defendant to have the property released by posting his own bond, are significant procedural safeguards for the defendant. In addition, in this case the defendant was "not at the unsupervised mercy of the creditor and court functionaries," *Mitchell v. W.T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d at 406, for the local practice of the El Paso County District Court requires that the writ of garnishment can only be issued by a judge, as was done in this case. Therefore, as in *Mitchell,* there was "judicial control of the process from beginning to end." 40 L.Ed.2d at 406.

While the enhanced protection afforded by the local practice obviates the necessity of our ruling on the constitutionality of C.R.C.P. 102 and 103, it is noteworthy that an attachment procedure similar to Colorado's has been upheld as comporting with the requirements of the due process clause. *McKay v. McInnes,* 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975. That *McKay* has

either been reincarnated or never died is indicated by the manner in which it is cited and discussed by the Court in *Mitchell* in limiting *Sniadach* and *Fuentes* to the special situations there present.

We therefore find that the procedure employed in this case was consonant with the due process clause of the Fourteenth Amendment.

The order of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

MR. JUSTICE DAY does not participate.