**CHAFFIN, INC., a Kansas corporation, Plaintiff-Appellant,**

**v.**

**Dennis WALLAIN, a/k/a Earl Dennis Wallain, a/k/a Dennis Wallain, a/k/a Earl D. Wallain, and Karon Sue Wallain, a/k/a Karen Wallain, Both individually and d/b/a Roadrunner Fabrics, and Wallain Leasing Company, Defendants-Appellees.**

No. 83CA0255.

Colorado Court of Appeals, Div. I.

May 3, 1984.

Rehearing Denied June 7, 1984.

Certiorari Denied Oct. 9, 1984.

Williams, Turner & Holmes, P.C., J.D. Snodgrass, Clark S. Spalsbury, Jr., Grand Junction, for plaintiff-appellant.

Overholser, Slee, Reed & Pixler, P.C., John W. Overholser, Montrose, for defendants-appellees.

METZGER, Judge.

Plaintiff, Chaffin, Inc., obtained a prejudgment attachment pursuant to C.R.C.P. 102 following filing of its complaint alleging that Dennis Wallain had converted over $366,000 of Chaffin's property. Approximately one year later, defendants Dennis and Karen Wallain filed a traverse, and after an extensive hearing, the trial court entered judgment dissolving the attach-

ment. We reverse and remand for further proceedings.

From 1979 to 1981, Dennis Wallain was a store manager for Chaffin. In 1981 Chaffin investigated a discrepancy of several hundred thousand dollars between inventory and revenue accounts at the store. Its auditors ascertained that the Wallains, who had stated their annual gross income on both their 1980 and 1981 federal tax returns to be less than $24,000, had purchased real and personal property during 1980 and 1981 valued in excess of $150,000. Further investigation revealed that Dennis Wallain had been "clearing" the store's cash registers regularly outside of store hours and without authorization.

At the December 1982 hearing on the Wallains' traverse, there was evidence that Dennis Wallain during 1980–81 had made a number of large cash deposits, some in excess of $20,000, to personal and business bank accounts belonging to him and to his wife. They purchased a private business in 1980, but there was no evidence of any net income or accumulation of wealth from this or any other source. Indeed, the Wallains had declared bankruptcy in 1975, following the failure of another small business they had previously owned and operated, and during bankruptcy proceedings, they had stated their personal assets to be less than $500.

There was considerable uncontradicted evidence of large declines in value on the personal and real property the Wallains had purchased in 1980 and 1981. This property included several cars, trucks, and trailers, five snowmobiles, and a number of vacant lots. Some of these purchases were made with the help of bank financing. There were declines in value from depreciation on the vehicles, from sale at a loss of some of the lots, from repossession upon default of other lots and some of the vehicles. The repossession of one lot resulted in a loss of approximately $47,000. There was evidence that the Wallains and their children had taken several out-of-state vacations during 1980 and 1981 and that they had acquired numerous personal luxury items such as firearms, stereos, and televisions. Dennis Wallain also made a $7,000 unsecured loan to his brother-in-law during this period, obtaining no promissory note therefor.

In its extensive findings of fact and conclusions of law, the trial court determined that due process concerns compelled it to construe C.R.C.P. 102 very narrowly. The court concluded that, although the facts recited above may have been relevant to Chaffin's allegations of conversion, they were not probative of the narrower issue of fraudulent intent involved in any subsequent concealment or transfer of property by the Wallains. The court held that there was an insufficiency of evidence to satisfy the "reasonable probability" burden of proof under C.R.C.P. 102(n)(1).

## I.

Chaffin first contends that the trial court erred in excluding its proffered evidence surrounding the creation of an alleged debt owed Chaffin by the Wallains. The trial court held that evidence concerning the nature and circumstances surrounding this debt went to the merits of the underlying conversion action, was not probative of the issues on the traverse, and therefore excluded the evidence. In the affidavit of traverse, the Wallains denied the existence of a debt to Chaffin, but argued successfully that, in any event, debt was not an issue since it went to the merits of the underlying conversion action. We find the trial court ruling to be erroneous.

■ C.R.C.P. 102(n)(1) discusses the procedure and mode of proof to be followed at the hearing on a traverse, and provides:

"The defendant may, at any time before trial, by affidavit, traverse and put in issue the matters alleged in the affidavit, testimony, or other evidence upon which the attachment is based and if the plaintiff shall establish the reasonable probability that any one of the causes alleged in the affidavit exists, said attachment shall be sustained, otherwise the same shall be dissolved. A hearing on the defendant's traverse shall be held within

seven days from the filing of the traverse and upon no less than two days' notice to the plaintiff. If the debt for which the action is brought is not due and for that reason the attachment is not sustained, the action shall be dismissed; but if the debt is due, but the attachment nevertheless is not sustained, the action may proceed to judgment after the attachment is dissolved, as in other actions where no attachment is issued."

Thus, in order to be able to sustain an attachment, a plaintiff is required to prove the existence of the underlying debt, since, without a debt, there can be no valid attachment. Accordingly, the evidence of debt proffered by Chaffin was relevant to the attachment.

The Wallains' argument concerning the propriety of this evidence is based on constitutional grounds. They assert that under the authority of *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); and *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), admission of the evidence would constitute a due process violation since evidence establishing debt would amount to an unconstitutional prejudgment of the case.

We agree with Chaffin that the trial court misapprehended the impact of these cases. These decisions discuss only the requirement of procedural due process, including a hearing, in prejudgment attachment cases. They do not, as the Wallains contend, stand for the proposition that a hearing itself, prior to trial on the merits, is a violation of due process.

While we agree that a plaintiff is required to prove the elements of his action for conversion at the trial on the merits, that requirement, in and of itself, does not alter the requirement of C.R.C.P. 102(n) that he establish the existence of a debt and whether that debt is due. Had the Wallains conceded the existence of the debt alleged, any further evidence of its existence would have been cumulative. However, the affidavit of traverse constituted a general denial, thus placing the debt in issue and requiring Chaffin to present evidence to support its allegations. Therefore, we conclude that the trial court erred in refusing to admit evidence proffered by Chaffin concerning the issue of debt.

II.

We also conclude that the trial court erred in excluding evidence of circumstances surrounding the alleged embezzlement. The amount of the alleged debt, the nature of Chaffin's claim, the value of the Wallains' known assets, and any evidence concerning alleged acts of concealment of funds were all relevant. These factors deal not only with the major issue of debt, but also with the issue of fraudulent intent, the second element that was required to be proved in order to sustain the attachment under C.R.C.P. 102(c). The trial court held that the cases relied upon by Chaffin, *Haffelfinger v. Perry*, 52 Colo. 444, 121 P. 1021 (1912), and *Curran v. Rothschild*, 14 Colo. App. 497, 60 P. 1111 (1900), should not be followed since they predate changes in C.R.C.P. 102 and predate contemporary judicial concerns for the propriety of summary prejudgment seizure. We disagree.

In *Bernhardt v. Commodity Option Co.*, 187 Colo. 89, 528 P.2d 919 (1974), our Supreme Court held that a prejudgment attachment procedure employed under the less stringent standard in the predecessor to C.R.C.P. 102 was not constitutionally defective, even in light of the holdings in *Sniadach, Fuentes,* and *Mitchell, supra.* Thus, the authorities relied upon by Chaffin are still relevant to our inquiry.

*Curran v. Rothschild, supra,* is particularly appropriate to the facts of this case since it concerned a situation where a debtor-businessman transferred all his property to a corporation he formed, and issued certificates of stock to his creditors *pro rata.* His creditors obtained a prejudgment attachment, asserting that he had fraudulently conveyed his property so as to hinder or delay one or more of them, pursuant to a code provision containing language identi-

cal to C.R.C.P. 102(c)(5), (6), (7) and (8). There, as here, counsel for defendant argued:

"[To] justify an attachment upon that ground, the transaction must be infected with fraud, in the general and odious sense of the term, and that, to sustain the attachment against a traverse, it is incumbent upon the plaintiffs to show that the motive of the transfer was dishonest, and its purpose to cheat creditors, and deprive them of the power ever to realize anything on their claims."

The court rejected that contention, holding:

"A disposition by the debtor of his property which puts it beyond the reach of legal process hinders and delays them; and if his intention in making the transfer is to deprive them of the benefit of their legal remedies, even though he also intends that eventually the proceeds of the property shall be applied in payment of their claims, the transaction is fraudulent. It is the intent to delay creditors which constitutes the act a fraud upon them."

■ In this regard, we would point out that intent may be proved by circumstances as well as by direct proof, and that an attachment may be sustained based solely upon circumstantial evidence of intent. *First National Bank v. Poor*, 94 Colo. 314, 29 P.2d 713 (1934); *see Kopeikin v. Merchants Mtg. & Trust Corp.*, 679 P.2d 599, (Colo.1984).

■ The trial court seemed to conclude that inasmuch as the Wallains acted "openly" in forming various corporations, in depositing large sums of cash into bank accounts, and in purchasing many items of real and personal property, they lacked fraudulent intent. However, fraud is not equated with secretiveness. *Hafelfinger v. Perry, supra, Curran v. Rothschild, supra.*

■ Thus, we conclude that the trial court erred in its determination, as a matter of law, that fraudulent intent for purposes of C.R.C.P. 102(c) must be equated with secretive actions.

## III.

■ Chaffin also asserts that the trial court erred in determining that neither estoppel nor laches were applicable to the traverse. While the traverse was filed well over a year after the attachment occurred, C.R.C.P. 102(n)(1) specifically provides that a defendant may traverse the attachment "at any time before trial." Thus, we conclude that the trial court correctly determined this issue.

## IV.

Chaffin contends that the trial court should have drawn an adverse inference from the Wallains' repeated assertion of their Fifth Amendment privilege against self-incrimination. We agree that such an inference was permissible.

Proposed Fed.R.Evid. 513(a) states:

"Comment or inference not permitted— The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom."

However, in promulgating the Colorado Rules of Evidence, our supreme court specifically declined to adopt this proposed language.

Some states have adopted that rule, but the federal judiciary has not. *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* § 513 (1981). In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the United States Supreme Court held that "the [Fifth] Amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." *See also* 8 J. Wigmore, *Evidence* 439 (McNaughton rev.1961).

■ While the privilege against self-incrimination exemplifies, in one sense, important policy considerations, the realities of modern litigation must be recognized. In civil actions, the vast weight of the government's investigative and prosecutorial resources are not present. And, the ability of a party in a civil action to litigate

a claim can be severely hampered if, as here, his requests for discovery and questions to a witness are met with the litany of a Fifth Amendment claim of privilege. Thus, we hold that the finder of fact in a civil case should be permitted to draw an adverse inference against a party who claims the Fifth Amendment privilege in response to discovery requests and to properly posed questions.

The judgment of the trial court is reversed and the cause is remanded for further proceedings in accordance with the views expressed in this opinion.

PIERCE and BERMAN, JJ., concur.